IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BARBARA WILSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CASE NO.: 2:05CV-00465-D |
| WALGREEN CO., INC. | ) ) ) |
| Defendant. | ) |

### DECLARATION OF JOANN JONES

1.  My name is JoAnn Jones. I am over the age of 19, and I have personal knowledge of the matters and facts set forth in this declaration.

2.  In the Summer of 2004, I temporarily served as store manager for Walgreen's new Perry Hill Road store, located at 3892 Atlanta Highway in Montgomery, Alabama, and known as Store No. 2203, to open that store and initially staff it. While under construction, the Perry Hill Road store had a marquee informing all interested applicants that they should apply for employment via Walgreens' on-line website, www.walgreens.com.

3.  I selected Angela Duke as Senior Beauty Advisor after she submitted an on-line application for employment at the new Perry Hill Road store, and I considered her to be qualified because she had a customer service-oriented employment background, and because of her outgoing, hardworking demeanor. Her race played no part in my decision to select her.

4.  At the time I selected Ms. Duke as Senior Beauty Advisor in June, 2004, Ms. Barbara Wilson worked as a Beauty Advisor at Walgreen's Store No. 7746, located at 6680 Atlanta Highway in Montgomery, Alabama, where I am regularly the store manager. I hired Ms.

1

Wilson at Store No. 7746 as a Service Clerk on or about February 13, 2004, and promoted her to the position of Beauty Advisor shortly thereafter.

5. I believe Ms. Wilson was aware that I was responsible for staffing the new Perry Hill Road store because she asked me on several occasions when I would be accepting applications for employment for that store, and told me she was asking for her adult daughter, who was interested in working there. I informed Ms. Wilson when I was ready to begin accepting applications, and told her that her daughter would need to submit her application online on Walgreen's website, www.walgreens.com. It is Walgreen's policy that immediate family members and members of the household are not permitted to work at the same Walgreen store.

6. At the time I selected Ms. Duke for the Senior Beauty Advisor position at the Perry Hill Road store, Ms. Wilson had neither submitted an application for that position, nor indicated to me that she was interested in such a position, and I was not aware that she was interested in being considered for the Senior Beauty Advisor position at the Perry Hill Road store at that time. I did not interview Ms. Wilson for the Senior Beauty Advisor position at the Perry Hill Road store because she did not submit an application. Had Ms. Wilson submitted an application, and been interviewed, I would have selected Ms. Duke because I considered Ms. Duke to be better qualified than Ms. Wilson because of her more extensive customer-service background. Although Ms. Wilson had worked as a Beauty Advisor for me at store no. 7746, she had only done so for a brief period at the time I selected Ms. Duke for the Perry Hill Road Senior Beauty Advisor position. Race played no part in my decision not to select Ms. Wilson for the Senior Beauty Advisor position at Store 2203 in June, 2004.

7. After I selected Angela Duke as the new Senior Beauty Advisor for Store No. 2203, I assigned her to work at Store No. 7746, where I am the regular Store Manager, from June 14, 2004, until approximately July, 2004, when Store No. 2203 became open to the public. While working at Store No. 7746, Ms. Duke worked along with Barbara Wilson and Tantameka Moorer, who is African American, and whom I selected as Senior Beauty Advisor at that store in approximately November, 2003.

8. On several occasions while Ms. Wilson worked as a Beauty Advisor at Store No. 7746, I arrived on Monday mornings to find boxes and other merchandise behind the cosmetics counter that should not have been there. On these occasions, I assumed Ms. Wilson left these items behind the counter because she had worked the Sunday evening shift the night before, and asked her why she had done so. On each such occasion, Ms. Wilson replied that she was not responsible for the clutter behind the cosmetic counter, and that the "overnight crew" left it there. While I was skeptical of Ms. Wilson's explanation because the "overnight crew" consists of one manager and one cashier, neither of whom are stationed at the cosmetics counter, I did not raise my voice to Ms. Wilson at any of these times, or refer to the cosmetics areas as a "hog pen," but simply told her that, regardless of who left the items behind the counter, she was responsible for maintaining the cleanliness and orderliness of her work area.

9. In or around December, 2004, or January, 2005, my Senior Beauty Advisor at Store No. 7746, Tantameka Moorer, took approximately four days of vacation, and Ms. Wilson was responsible for the after-Christmas resets in the cosmetics area of the store in Ms. Moorer's absence. When I observed that Ms. Wilson was experiencing difficulty completing her resets in a timely manner, I walked to where she was working and began helping her. In response, Ms.

3

Wilson began crying and told me something to the effect that my attempts to help her with her reset made her feel as though I did not believe she was capable of doing her job. I assured her that I was only trying to help her, as it was important that the resets be completed before Ms. Moorer returned from vacation. At no time did I say this, or anything else, to Ms. Wilson because of her race, or because she filed a Charge of Discrimination with the EEOC.

10.   In January, 2005, Ms. Angela Duke voluntarily quit her employment with Walgreen, and a Senior Beauty Advisor position became available at the Perry Hill Road store. The position was posted at Store No. 7746, and I was informed by Mr. Leland Wallace, then Store Manager of the Perry Hill Road store, that Ms. Wilson applied for the vacancy. After canceling her first interview with Mr. Wallace with no explanation, Mr. Wallace came to interview Ms. Wilson at Store No. 7746 while she was working for her convenience. Prior to the time a new Senior Beauty Advisor could be selected for the Perry Hill Road Store, Mr. Wallace was transferred to a Birmingham, Alabama, store, and Ms. Wilson voluntarily withdrew her name for consideration for the position. Mr. Wallace was replaced at the Perry Hill Road Store by Ms. Candace Epps, who is African American, who selected ShaRhonda Febler, an African American female and current Walgreen employee, for the Senior Beauty Advisor position. I am not aware of any reason given by Ms. Wilson for her withdrawal from consideration for the position.

Under penalty of perjury, I declare that the foregoing statements are true and correct.

Dated this 14 day of March, 2006.

*JoAnn Jones*
JoAnn Jones

# TAB C

CANDACE EPPS
WALGREEN COMPANY, INC.
*** HIGHLY CONFIDENTIAL ***
CANDACE EPPS
November 9, 2005

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CIVIL ACTION NO. 2:05-CV-00498-T

CANDACE EPPS,
    Plaintiff,
vs.

WALGREEN COMPANY, INC.,
    Defendant.

DEPOSITION
OF
CANDACE EPPS
November 9, 2005

Taken Before: Kimberly T. Hoff, CSR, RPR, RMR, CLR, and Notary Public

Page 3

1    A P P E A R A N C E S
2
3  FOR THE PLAINTIFF:
4
5  Jay Lewis
6  j-lewis@jaylewislaw.com
7  LAW OFFICES OF JAY LEWIS, LLC
8  847 South McDonough Street
9  P. O. Box 5059
10  Montgomery, Alabama
11  (334) 263-7733
12
13  FOR THE DEFENDANT:
14
15  Richard Carrigan
16  richard.carrigan@ogletreedeakins.com
17  OGLETREE, DEAKINS, NASH,
18    SMOAK & STEWART, P.C.
19  One Federal Place, Suite 1000
20  1819 Fifth Avenue North
21  Birmingham, Alabama 35203
22  (205) 328-1900
23

Page 2

1    S T I P U L A T I O N
2    IT IS STIPULATED AND AGREED by and
3  between the parties through their
4  respective counsel that said deposition
5  may be taken before Kimberly T. Hoff,
6  Certified Shorthand Reporter, Registered
7  Professional Reporter, Registered Merit
8  Reporter, Certified Livenote Reporter;
9    That the signature to and the
10  reading of the deposition by the witness
11  is waived, the deposition to have the
12  same force and effect as if full
13  compliance had been had with all laws
14  and rules of Court relating to the
15  taking of depositions;
16    That it shall not be necessary for
17  any objections to be made by counsel to
18  any questions, except as to form or
19  leading questions, and that counsel for
20  the parties may make objections and
21  assign grounds at the time of trial, or
22  at the time said deposition is offered
23  in evidence, or prior thereto.

Page 4

1  ALSO PRESENT:
2
3  Glenn Kaun
4  Paul Rengering

1 (Pages 1 to 4)

CONTAINS CONFIDENTIAL PORTION THAT IS FOR ATTORNEYS' EYES ONLY
Tyler Eaton Morgan Nichols & Pritchett Inc.

CANDACE EPPS
WALGREEN COMPANY, INC.

*** HIGHLY CONFIDENTIAL ***

CANDACE EPPS
November 9, 2005

Page 5

```
 1         INDEX
 2
 3      EXAMINATION INDEX
 4
    EXAMINATION OF CANDACE EPPS:
 5    BY MR. CARRIGAN           7
 6  SEALED TESTIMONY:
      VOIR DIRE BY MR. LEWIS  104
 7
    CONTINUED EXAMINATION OF CANDACE EPPS:
 8    BY MR. CARRIGAN         105
      BY MR. LEWIS            170
 9
10         EXHIBIT INDEX
11  Defendant's
     1  Plaintiff's Initial      15
12      Disclosures
13   2  Executive Assistant      17
        Performance Review dated
14      3/16/2004
15   3  Discrimination and       66
        harassment policy signed
16      4/21/03
17   4  Employment record       107
18   5  Management Trainee      108
        Performance Review for
19      period ending March 2003
20   6  Employment record for   109
        Leland Wallace
21
     7  Complaint               145
22
23
```

Page 6

```
 1         I, Kimberly T. Hoff, a
 2  Registered Merit Reporter of Decatur,
 3  Alabama, and a Notary Public for the
 4  State of Alabama, acting as
 5  Commissioner, certify that on this date,
 6  pursuant to the Federal Rules of Civil
 7  Procedure and the foregoing stipulation
 8  of counsel, there came before me at the
 9  law offices of Jay Lewis, 847 South
10  McDonough Street, Montgomery, Alabama,
11  on Wednesday, November 9, 2005,
12  commencing at 1:20 p.m., CANDACE EPPS,
13  witness in the above cause, for oral
14  examination, whereupon the following
15  proceedings were had:
16
17          CANDACE EPPS,
18     being first duly sworn, was
19     examined and testified as follows:
20
21        COURT REPORTER: Usual
22  stipulations?
23        MR. LEWIS: Yes.
```

Page 7

```
 1          EXAMINATION
 2  BY MR. CARRIGAN:
 3     Q.  State your full name, please.
 4     A.  Candace Redale Epps.
 5     Q.  Have you been known by any
 6  other names?
 7     A.  No, sir.
 8     Q.  Where do you live?
 9     A.
10     Q.  How long have you lived at that
11  address?
12     A.  Since the end of '99, 2000.
13     Q.  Where did you live before that?
14     A.  Before that, I lived in
15  Florida.
16     Q.  Where in Florida?
17     A.  In Palm Bay.
18     Q.  What county is that?
19     A.  Brevard.
20     Q.  Where do you work now?
21     A.  Walgreens.
22     Q.  What is your job?
23     A.  Store manager.
```

Page 8

```
 1     Q.  How long have you been store
 2  manager?
 3     A.  Since February of this year.
 4     Q.  Who promoted you to store
 5  manager?
 6     A.  Paul Rengering.
 7     Q.  The gentleman at the end of the
 8  table there?
 9     A.  Yes, sir.
10     Q.  What previous positions did you
11  hold with Walgreens?
12     A.  Assistant manager, executive
13  assistant and now the store manager.
14     Q.  During what period of time were
15  you an assistant manager?
16     A.  July -- I got hired in 2002 to
17  2003.
18     Q.  2002 to 2003, you were --
19     A.  Assistant manager.
20     Q.  Okay. And then from 2003
21  until --
22     A.  2005, I was --
23     Q.  -- early 2005, what was your
```

2 (Pages 5 to 8)

CANDACE EPPS
WALGREEN COMPANY, INC.

*** HIGHLY CONFIDENTIAL ***

CANDACE EPPS
November 9, 2005

Page 9

1  position?
2      A.  Executive assistant.
3      Q.  Okay. When you were an
4  executive assistant, did you work under
5  a store manager?
6      A.  Yes, sir.
7      Q.  Who was the store manager that
8  you worked for?
9      A.  James Freeman.
10     Q.  Did you work under any other
11 store manager other than James Freeman?
12     A.  Yes.
13     Q.  Who else?
14     A.  Mr. Leland Wallace.
15     Q.  Okay. During what period of
16 time did you work under Leland Wallace?
17     A.  From June, July -- I'm not sure
18 what month, fall of 2005 -- '-4, yeah,
19 last year, '-4.
20     Q.  I'm sorry, from fall of 2004 --
21     A.  Yeah.
22     Q.  -- until February of 2005?
23     A.  February, yes, sir.

Page 10

1      Q.  Did he leave the store?
2      A.  Yes, sir.
3      Q.  Did you replace him?
4      A.  Yes, sir.
5      Q.  Why did he leave the store?
6      A.  He got transferred back to
7  Birmingham.
8      Q.  Was that his home or his
9  preferred location?
10     A.  That's his home, I believe.
11     Q.  Do you know whether he had
12 asked to be transferred to Birmingham?
13     A.  I'm not sure if he actually
14 asked.
15     Q.  Have you ever had your
16 deposition taken before?
17     A.  Yes, sir.
18     Q.  In what situation?
19     A.  Situation where -- versus
20 Walgreens in 2003.
21     Q.  Okay. Tell me the
22 circumstances of your deposition being
23 taken in 2003.

CONTAINS CONFIDENTIAL PORTION
Tyler Eaton Morgan N